IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: ) | | |
| NICOLE PRESTON ) | | |
| ) | Case No. 08-20141 | |
| Debtor. ) | Chapter 7 | |
| _____) | | |
| ) | | |
| NICOLE PRESTON ) | | |
| ) | Adversary No. 08-2017 | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| GMPQ, LLC. ) | | |
| ) | | |
| Defendant. ) | | |

**MEMORANDUM OPINION AND ORDER**

This adversary comes before the Court on competing Motions for Summary Judgment filed by Nicole Preston ("Plaintiff" or "Debtor") and GMPQ, LLC ("Defendant"). Plaintiff seeks that the Defendant be held liable for a willful violation of the automatic stay provisions of 11 U.S.C. § 362(a). Defendant denies that collection of sequestered funds amounts to a violation of the automatic stay and contends that any violation of the stay was not willful under § 362(k)(1). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E) and (O), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court denies in part and grants in part Plaintiff's Motion for Summary Judgment and denies Defendant's Counter-Motion for Summary Judgment.

## I. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Bankruptcy Procedure 7056(c), applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056; *Celotex v. Catrett,* 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record-only those inferences that are reasonable." *Bank Leumi Le-isreal, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

## II. FACTUAL BACKGROUND

The following factual summary was taken from Plaintiff's statement of uncontroverted material facts, accepted as accurate by Defendant, and the documents and affidavit submitted by Defendant and constitutes this Court's Finding of Facts.

The Circuit Court of Cole County, Missouri, adjudicated a default judgment in favor of Defendant in a lawsuit to collect a debt owed by Plaintiff on a payday loan. Pursuant to the judgment, Defendant's Collection Manager completed a sequestration form and delivered it to the Circuit Court. On November 26, 2007, the Circuit Court issued a writ of sequestration to Plaintiff's employer, the State of Missouri, in the amount of $888.42, including principal plus interest, court costs and attorney fees. Thereafter, Plaintiff's employer made three separate payments, totaling $539.15, out of Plaintiff's wages to the Cole County Sheriff's Department, including: $179.43 on December 26, 2007; $179.86 on January 14, 2008; and $179.86 on January 25, 2008.

On February 5, 2008, Plaintiff filed a petition for relief under Chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Missouri. A notice of the bankruptcy filing was filed with the Circuit Court of Cole County, Missouri, and sent to Mr. Richard L. Beaver, Defendant's attorney of record in the debt collection lawsuit. Defendant was not listed as a creditor in Plaintiff's bankruptcy case and the sequestration funds were not scheduled as property of the estate.

Subsequent to the bankruptcy filing, Plaintiff's employer made two additional payments, totaling $349.27, out of Plaintiff's wages to the Sheriff's Department: $179.87 on February 8, 2008; and $169.40 on February 25, 2008. On March 10, 2008, the clerk of the Circuit Court received the total $888.42 due pursuant to the writ of sequestration from the Sheriff's Department, and sent the total amount to Defendant. On March 21, 2008, upon discovery that these sequestered wages had been delivered to Defendant, Plaintiff's counsel sent another letter to Mr. Beaver demanding that the funds be returned to the bankruptcy estate.

3

### III. DISCUSSION AND LEGAL ANALYSIS

#### A. Violation of Automatic Stay

Upon the filing of a bankruptcy petition, an automatic stay goes into effect, which prohibits certain actions against the debtor, property of the debtor and property of the bankruptcy estate.  11 U.S.C. § 362(a).  It is well established that the act of sequestration falls within the prohibitions of the automatic stay as the continuation of a judicial proceeding prohibited by § 362(a)(1) and the enforcement, against the property of the estate, of a judgment obtained before the commencement of the bankruptcy case prohibited by § 362(a)(2). *See, e.g., In re Roche*, 361 B.R. 615, 621 (Bkrtcy. N.D. Ga. 2005).  Therefore, the continuation of a sequestration is a violation of the automatic stay. *See In re See*, 301 B.R. 549 (Bkrtcy. N.D. Iowa 2003) (holding that creditor violated automatic stay by continuing to garnish Chapter 7 debtor's wages postpetition); *In re Yetter*, 112 B.R. 301 (Bankr. S.D. Iowa 990) (holding that the post-petition transfer of garnished funds to the creditor violated the automatic stay).

In the present case, the writ of sequestration was issued approximately two months before Plaintiff filed for Chapter 7 bankruptcy.[1]  The first issue that must be addressed is whether Plaintiff maintained an interest in the sequestered wages at the time she filed her bankruptcy petition, thereby making the sequestered wages the property of her bankruptcy estate and causing any collection activities of Defendant to be a violation of the automatic stay.

Most courts have held that a debtor's interest in sequestered wages terminates upon the entry of a wage deduction or charging order by the court.  *Accord In re Mason*,

---

[1] The Circuit Court issued a writ of sequestration, pursuant to Mo. Court Rule 90.16 (1999), as Plaintiff was an employee of the State of Missouri.

153 B.R. 8 (Bankr. D.R.I. 1993) (finding the debtor retains an interest in garnished wages until valid charging order entered by the court); *In re Weatherspoon*, 101 B.R. 533 (Bankr. N.D. Ill. 1989) (finding termination of debtor's interest in garnished wages occurs upon court's entry of final deduction order); *In re Nunally*, 103 B.R. 376 (Bankr. D.R.I. 1989) (same); *In re Johnson*, 53 B.R. 919 (Bankr. N.D. Ill. 1985) (held debtor divested of interest in wages when court enters wage deduction order).  However, as discussed by this Court in *In re Heerlein*, 336 B.R. 148, 150 (Bankr. W.D. Mo. 2006), an order directing garnished funds to be paid into the court and for the court to pay the funds over to the creditor is no longer required in Missouri.[2]  This Court concluded that this fact "lends support to the proposition that an interest in the garnished funds must now pass from a debtor to a creditor at an earlier time, perhaps upon payment by the garnishee of funds into the court, which discharges the garnishee."  *Heerlein*, 336 B.R. at 151-2.

In the present case, the total amount due pursuant to the writ of sequestration was bifurcated into five separate withholdings of Plaintiff's wages, each payment being made individually to the Sheriff's Department, where they were held until the total amount was collected and paid to the clerk of the Circuit Court.  This Court's *Heerlein* decision makes it fairly clear that if any of Plaintiff's wage payments held by the Sheriff's Department had been paid to the clerk of the Circuit Court pre-petition, those funds would no long be part of Plaintiff's bankruptcy estate.  The issue, of course, is that the

---

[2] Rule 90.17, repealed in 1999, provided:  The court or jury shall find what property subject to garnishment was attached or the value thereof.  The court shall order that the property be delivered to the officer or paid into court within such time as the court shall direct.  Upon payment of the property into court the clerk shall disburse it, less costs, to the garnishor within fifteen days after receipt without further order of the court, unless a motion to quash the execution or garnishment has been filed.  If the property is not delivered to the officer or paid into the court within such time, the court may enter judgment against the garnishee for the value of the property.

5

Sheriff's Department did not send the aggregate of the sequestration funds to the clerk of the Circuit Court until after Plaintiff filed for bankruptcy.

Neither party has raised any legal arguments as to whether this Court should make a distinction for purposes of deciding the moment that title passes based upon the receipt of funds by the Sheriff's Department or receipt of said funds by the court. However, it seems that making a distinction of what constitutes property of a debtor's bankruptcy estate based upon the payment schedule of the local sheriff's department would be arbitrary.  The spirit of the analysis in *Heerlein* suggests that once sequestered wages are delivered to the sheriff's department, acting as a conduit on behalf of the court, interest in such funds has passed to the creditor.

This conclusion can also be deduced through analogizing Rule 90.10(a), dealing with the discharge of a garnishee, to Rule 90.16(a), dealing with writs of sequestration. Rule 90.10(a) states: "Timely payment or delivery of [garnishment] property into court thereby discharges the garnishee from further liability on account of the property subject to garnishment so paid or delivered."  This rule stands for the proposition that the payment of garnishment funds into the court completes the garnishment process and represents a point in which interest in the garnished funds passes from the garnishee (and therefore, the debtor) to the creditor.  Although there is no direct corresponding rule to writs of sequestration, Rule 90.16(a) directs the sheriff to "take into possession any and all moneys…for salary, wages, fees, or earnings for services rendered by the judgment debtor then due and payable,…from the date of the writ to the return date thereof."  This suggests that the payment of the sequestered wages to the sheriff completes the

sequestration process much in the same way that paying garnishment funds into the court completes the garnishment process.

In Plaintiff's Motion for Partial Summary Judgment, Plaintiff argues that since her employer's answers to the garnishment interrogatories issued by the Circuit Court were not filed until February 29, 2008, after the bankruptcy filing, Plaintiff has an ownership interest in all $888.42, the total amount all the sequestration funds. Missouri Rules of Civil Procedure, Rule 90.07, dealing with answers to interrogatories only applies to writs of garnishment; thus, there being no rule that corresponds to writs of sequestration, the Missouri Rules are interpreted as not requiring the State of Missouri to respond to interrogatories. Accordingly, tying the termination of a debtor's interest in sequestered funds to the filing of answers to interrogatories would make little sense.

However, even if Rule 90.07 were read as enveloping writs of sequestration, the Court does not believe that the filing of answers to interrogatories should be the determinative event. Rule 90.10 should be read as discharging the garnishee subject to the condition that there be no issue with the garnishee's answers to interrogatories and that any property subject to the garnishment in the garnishee's possession be paid or delivered into the court no later than ten days after the return of the writ of garnishment or levy. The obligation to answer interrogatories should not be read, as Plaintiff suggests, as a triggering requisite for an obligation for the garnishee to comply with a court-issued writ of sequestration and for the termination of the debtor's interest in the property involved.

Therefore, this Court holds that, with regards to the three payments of sequestered wages, totaling $539.15, that were made to the Sheriff's Department prior to Plaintiff's

bankruptcy filing on February 5, 2008, any interest in the funds passed from Plaintiff once they were paid to the Sheriff's Department, ceased being her property and did not become property of her bankruptcy estate. However, the two remaining payments of sequestered wages, totaling $349.27, made to the Sheriff's Department post-petition are property of Debtor.  The collection of the two post-petition sequestered wages constituted a violation of the automatic stay under § 362(a)(1), as a continuation of judicial action against the debtor that was commenced pre-petition; under § 362(a)(5), as an act to enforce against property of the debtor a lien that secured a claim that arose pre-petition; and under § 362(a)(6), as an act to collect a claim against the debtor that arose pre-petition.

### B.  Willful Violation of the Automatic Stay

An individual who is injured by a "willful violation of a stay…shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).  Under this section, an act is deemed to be a willful violation if the violator knew of the automatic stay and intentionally committed the act regardless of whether the violator specifically intended to violate the stay.  *See Jove Eng'g v. IRS*, 92 F.3d 1539, 1555 (11th Cir. 1996).

In the present case, Defendant argues that it had no reason to know of Plaintiff's bankruptcy filing because notice of the filing was sent to Mr. Richard L. Beaver, attorney of record for Defendant in the Circuit Court case, who ceased representing Defendant following that judgment.  Thus, the second issue that must be addressed is whether actual notice of the bankruptcy filing by Mr. Beaver can be imputed to the Defendant.

8

Notice served upon counsel generally satisfies any requirement to give notice to the party. *In re Schicke*, 290 B.R. 792 (B.A.P. 10th Cir. 2003) (holding that a Chapter 7 debtor can properly schedule a judgment creditor by sending notice to the attorney who represented it in obtaining the judgment in certain circumstances); *In re Griggs*, 306 B.R. 660, 665 (Bkrtcy. W.D. Mo. 2004) (holding that notice provided to an attorney who represented a creditor in a state court proceeding that resulted in the underlying judgment against the debtor was imputed to the creditor). For notice sent to a creditor's attorney to be imputed to the creditor, there must be some sort of nexus between the creditor's retention of the attorney and the creditor's issues with the debtor. *Schicke*, 290 B.R. at 803. As a general proposition, an attorney who represents the creditor in matters against a debtor pre-petition, such as in obtaining a judgment, will be an agent of the creditor in the context of a debtor's bankruptcy case. *Id*.

From this precedent it is clear that if Mr. Beaver was the representing attorney of Defendant at the time that Mr. Beaver received notice of Plaintiff's bankruptcy filing, Defendant would be charged with imputed knowledge of the bankruptcy, thus making its collection of the sequestered wages a willful violation of the automatic stay. However, the present case is complicated by Defendant's insistence that the attorney-client relationship between Mr. Beaver and Defendant terminated sometime before Mr. Beaver received notice of Plaintiff's bankruptcy filing, thereby severing the agency relationship between the two and the legal consequence that notice received by the attorney is imputed to the client. Neither Defendant nor Plaintiff has provided any applicable law to support a determination as to whether Mr. Beaver was an agent of Defendant. Likewise,

9

this Court has not been provided with any evidence of Defendant's and Mr. Beaver's terms of engagement.

Under Missouri law, the attorney-client relationship is an agency relationship governed by general agency law. *Sappington v. Miller,* 821 S.W.2d 901, 904 (Mo. App.1992). An agency relationship is created from "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Dillard v. Rowland,* 520 S.W.2d 81, 90 (Mo. App.1974). With respect to an attorney-client agency relationship, the Missouri Court of Appeals has held that such a relationship "is sufficiently established when the advice and assistance of the attorney are sought and received in matters pertinent to his profession." *Erickson v. Civic Plaza Nat. Bank of Kansas City,* 422 S.W.2d 373, 378 (Mo. App.1967). It is undisputed that there existed an attorney-client relationship between Mr. Beaver and Defendant at least as of the date of the Circuit Court judgment; what is not clear is whether this relationship was ever terminated and whether it existed at the time that notice of the bankruptcy filing was sent to Mr. Beaver.

Where the existence of an attorney-client relationship is in dispute, and the attorney and alleged client deny its existence, the party asserting the relationship exists bears the burden of proof. *Resolution Trust Corp. v. Gibson*, 829 F. Supp. 1121, 1126 (W.D. Mo. 1993); *Qualls v. Field Enterprises Education Corporation,* 302 F. Supp. 152, 153 (E.D. Mo.1969); *Schwarze v. May Dept. Stores,* 360 S.W.2d 336, 339 (Mo. App.1962). Plaintiff is charged with the burden of proving that there existed an agency relationship between Mr. Beaver and Defendant.

10

Plaintiff has offered scarce facts and circumstances to meet her burden of proof in the present case. Her only contention seems to be that Mr. Beaver never filed a motion to withdraw from representation of Defendant. However, she cites no law for the proposition that an attorney in such a matter continues to represent the client indefinitely after judgment.

It would appear that Plaintiff has not met her burden in proving that an attorney-client relationship existed between Mr. Beaver and Defendant. Nor has Defendant met its burden of proof that its attorney-client relationship with Mr. Beaver had terminated, instead showing only that it had not asked Mr. Beaver to take further action post-judgment. However, regardless of whether an attorney-client relationship existed, Defendant has by its own submission acknowledged that it has received notice of Plaintiff's bankruptcy filing.[3] Defendant has plead that, on April 18, 2008, it received notice of the bankruptcy from a letter from Plaintiff's attorney and summons; furthermore, Defendant has plead that Mr. Beaver showed a previous letter from Plaintiff's attorney dated March 21, 2008, to Defendant.[4]

An "innocent" stay violation can become willful if the creditor "fails to remedy the violation after receiving notice of the stay." *In re Diviney*, 225 B.R. 762, 776 (B.A.P. 10th Cir. 1998); *see also, In re Dencklau*, 158 B.R. 796 (Bankr. N.D. Iowa 1993) (holding that a willful violation of the automatic stay does not require a specific intent to violate a court order). As such, Defendant was at least under obligation, beginning on April 18, 2008 (and perhaps earlier), to return the post-petition continuing wage

---

[3] Defendant's Statement of Uncontroverted Facts, ¶ 11.
[4] Defendant claims that it received two "first notices" of the bankruptcy filing. Although the first "first notice" was received on April 18, 2008, Defendant does not clarify when the second "first notice" was received. *See* ¶ 11.

11

sequestrations to the Debtor. Accordingly, since Defendant had knowledge that the automatic stay of § 362(a) was effective at least beginning April 18, 2008, Defendant's collection and retention of Plaintiff's sequestered wages subsequent to this date constituted a willful violation of the stay under § 362(k)(1), entitling Plaintiff to recover actual damages, including costs and attorney's fees.

Therefore, for the reasons stated above, it is

ORDERED that Plaintiff's motion for summary judgment is hereby DENIED in part as to pre-petition sequestered wages being a violation of the automatic stay and GRANTED in part as to post-petition sequestered wages being a violation of the automatic stay; it is further

ORDERED that Plaintiff's motion for summary judgment is hereby GRANTED in part as to Defendant's willful violation of the automatic stay for post-petition sequestered wages; it is further

ORDERED that Defendant's counter motion for summary judgment is DENIED; it is further

ORDERED that an evidentiary hearing be held to determine the issue of Plaintiff's damages only.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated:   October 7, 2008        /s/ Dennis R. Dow

THE HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE

Copies to: